No. 3711.

(Court of Appeal, Parish of Orleans.)

MRS. LOUISA TALHAN vs. JOHN MULE.

Appeal from Civil District Court, Division "B."

M. S. Mahoney and H. N. Gautier, for Plaintiff and Appellant.

Jerome Meunier and Chas. F. Claiborne, for Defendant and Appellee.

In this case involving issues of fact only and where the testimony is con-
flicting and the cause cannot be determined without disregarding the
testimony of some of the witnesses, the opinion of the judge who seen
them, and heard them testify. is entitled to great weight, and if not
manifestly erroneous will be adopted.

MOORE, J. The defendant is the owner of a certain lot of
ground situated in the town of McDonoghville in the Parish of
Jefferson, which town lies on the west or left ascending bank of
the Mississippi river, and is above and immediately adjoining
that part of the City of New Orleans known as Algiers.

On this lot was an old and dilapidated cow-stable and shed
which defendant desired demolished, and to be erected in their
stead a double cottage or dwelling house.

To this end he invited builders and contractors to present bids.
or offers, for the work. Among the number who solicited this
work was Louis P. Soublet and Alex Jamet, who made a joint
bid therefor. Their offer ($1150.00) was accepted, and a written
contract, prepared by the builders, was duly signed by the re-
spective parties.

Prior to the making and acceptance of the bid and the signing
of the contract, Jamet was advised by Mule—who resides in that
portion of the City of New Orleans situated on the east bank of
the Mississippi—as to the location of the place where the work
was to be done. After inspecting the lot indicated, as they sup-

382

posed, by Mule's discription of its lccation, the bid was then made and accepted and the contract signed. Proceeding, on the day following the signing of the agreement, to the execution of their contract, the contractors, it appears, entered upon a lot of ground belonging to the plaintiff and situated in Algiers and about ten blocks distant from Mule's lot. On this latter lot there was a large commodious and substantial cow-stable.

Believing that this was Mule's lot and the one called for under their contract, the contractors proceeded to demolish this cow-stable, and had, by their work on that day, injured and damaged the stable to the extent of about $120.00. The next morning they discovered their mistake.

It is for the purpose of recovering of Mule the damages thus sustained, which plaintiff fixes at $500.00, and also $1000.00 as exemplary damages, that this suit is brought.

The theory upon which it is sought to make Mule answerable for the damages claimed is, that as it is owing entirely to the description and location which he gave the builders of his property, but which was not the true and correct description thereof, but was accurately correct as to plaintiff's property, and which discription, *quoad* Mule, fully warranted the contractors in entering on that property and committing the tort complained of, he alone is responsible for the entire consequence which followed that erroneous discription.

It is contended by the plaintiff that the evidence establishes the fact that prior to making their bid, or offer, for the work, Mule informed them as to the location of his property; that they, or one of them, visited the lot fully answering that discription in Algiers, they not knowing that Algiers and McDonoghville were different places and situated in different parishes, and that on their return they discribed the place they had visited, and Mule advised them that that was the lot on which the building was to be erected; that again, and on the day the contract was signed,

Mule located the place and discribed the property, it agreeing fully with Mule's previous discription and with the contractors' report of the property which they visited, and that all these discriptions pointed unerringly to and answered the discription and location of plaintiff's lot, and that guided by this discription and location the contractors entered the plaintiff's lot and commenced the work of demolition to the extent stated.

It may not be doubted that if the record presented such a state of facts the plaintiff would be entitled to a judgment. But the record does not satisfy us that such are the facts. True it is that Jamet testifies thereto, substantially as stated; but he is not only not corroborated by anyone, but is contradicted by both Mule and another witness, Keller, who is a nephew of, and resides with, Mule; and besides this the contract itself, prepared by the contractors, called their attention conspicuously to the fact that Mule's property was not in Algiers but in McDonoghville, forasmuch as they had written therein "Algiers," and when it was presented for signature they erased that word and substituted "McDonoghville" therefor.

The preponderance of the evidence, in our opinion, is to the effect that Mule at all times in his several interviews with the builders informed them that his lot was in McDonoghville; he specifically stated that it was situated about one block from the "round-house" of the Texas & Pacific Railway Co., and about three blocks in front of the graveyard. (The plaintiff's lot is about ten blocks from the "round house," and behind the main Algiers Cemetery, known as the "St. Bartholomew graveyard.") He informed them as they would reach the "round house" they could see the stable on Mule's lot and from the stable could be seen the grave-yard of McDonoghville. It is shown that Soublet admitted, after the error was discovered, that he did not know where Mule's lot was, but that his associate in the contract, Jamet, said that *he* knew where it was and that he was *"sure* that that place (plaintiff's lot) belonged to Mule."

So also is it established that when Soublet and Jamet brought the contract to Mule's house for the latter's signature, Mule noticed that the property was discribed as being in Algiers, and he called their attention to this, stating that this was wrong, as the property was in McDonoghville, whereupon Soublet, in whose handwriting the contract was, made the change as required by Mule, erasing the word "Algiers" and substituting therefor "McDonoghville."

The contract on its face shows this erasure and substitution, and it is admitted by Jamet, who was present at the signing. On this occasion Jamet remarked to Keller, referring to the property: "Well, I don't know where it is, but I will come and get you in the morning, and we will go over there together and we will work." The following morning Keller awaited Jamet's coming until 9 o'clock, but as Jamet did not keep the appointment he then crossed the river going to Mule's place in McDonoghville thinking to meet Jamet there. Remaining there until 11 o'clock a. m., he returned to Mule's house, at which place Jamet called the following morning, accosting Keller with the inquiry why he (Keller) had not "come over" the day previous. Being advised by Keller that he had gone over to the lot and had there awaited Jamet until 11 o'clock, the latter then remarked: "Damm it, I must have made a mistake." Jamet then returned to plaintiff's lot in Algiers, gathered his working tools and removed them to Mule's lot, and informed plaintiff's neighbors that he and Soublet would repair the building which they had partially demolished, as soon as possible.

These facts we gather from the testimony of Mule and Keller. If they are to be believed, the plaintiff is clearly without right of action against Mule and the judgment is to be affirmed. If Jamet's uncorroborated testimony is to prevail, then it is that plaintiff's action is well founded. The testimony of one or the other must be disregarded in order to reach a decision. In a case thus conditioned, the well settled rule that in a case involving

issues of fact only and where the testimony is conflicting and the cause cannot be determined without disregarding the testimony of some of the witnesses, the opinion of the judge who saw them and hear them testify, is entitled to great weight and if not manifestly erroneous will be adopted, must prevail.

Our esteemed brother of the lower court evidently believed Mule's and Keller's testimony to be true, and decided the case accordingly. His opinion of the credibility of the witnesses not being manifestly erroneous, will be adopted, and accordingly the judgment appealed from is affirmed.